IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DAI Global, LLC,<br><br>     *Plaintiff*,<br><br>  v.<br><br>The United States,<br><br>     *Defendant*. | Civil Action No. <u>25-369 C</u><br><br><br><br>**COMPLAINT** |

### INTRODUCTION

1. Plaintiff DAI Global, LLC ("Plaintiff") by and through its undersigned counsel, files this Complaint against Defendant United States ("Defendant"), acting through the U.S. Agency for International Development ("USAID").

2. Defendant entered into contract number 72012118C00004, as modified (the "Contract"), with Plaintiff to assist in stabilizing the economy in Ukraine. *See* Exhibit 1. Plaintiff has provided this service and invoiced Defendant on January 16, 2025 in accordance with the Contract terms. Defendant, however, has failed to make payment on this invoice to date and appears unable or unwilling to do so, given its shuttering of USAID.

3. This lawsuit seeks to enforce the federal government's payment obligations under the Contract. Plaintiff seeks relief from this Court to recover the outstanding principal balance of $5,830,762.51, along with statutory interest penalties mandated under the Prompt Payment Act ("PPA"), 31 U.S.C. §§ 3901–07.

1

## JURISDICTION

4. This Court has subject matter jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), because Defendant is an agency of the federal government, and this case arises from a contract dispute between Plaintiff and Defendant.

5. Plaintiff submitted a certified claim to the contracting officer on February 18, 2025 for $5,832,459.33 in accordance with 41 U.S.C. § 7103 and FAR § 52.233-1, demanding payment of those amounts and PPA interest. In that claim, DAI wrote that if it "does not receive a written response within 5 business days, we will consider this a deemed denial and we will proceed to legal action for your agency's breach of contract pursuant to the Contract Disputes Act, 41 U.S.C. §§ 7101-7109."

6. The Contract Disputes Act ordinarily provides contracting officers with 60 days to provide a final decision on a certified claim that a contractor can appeal to this Court. *See* 41 U.S.C. §§ 7103(f), 7104(b)(1). This administrative exhaustion requirement does not affect this Court's jurisdiction over this claim. *See Johnson Lasky Kindelin Architects, Inc. v. United States*, 151 Fed. Cl. 642, 661 (2020) (characterizing the Contract Disputes Act claims process as an "administrative exhaustion requirement"); *Fort Bend County, Texas v. Davis*, 587 U.S. 541, 548–49 (2019) (distinguishing jurisdictional requirements from "nonjurisdictional claim-processing rules, which seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times") (quotations omitted).

7. Significantly, USAID appears to be unready, unwilling, and/or unable to pay its invoices to its implementing partners, including DAI. The Government has announced that it is closing USAID, has placed USAID officials on administrative leave, has frozen foreign assistance funding, and has refused to make payments due and owing. While some court orders have temporarily enjoined certain of those actions, USAID has still not recommenced payments and may never do so without Court interventions. As a result, going through the invoicing and claims process would be futile. This makes this claim ripe for review.

## PARTIES

8. Plaintiff is a limited liability company with its principal place of business at 7600 Wisconsin Ave., Suite 200, Bethesda, MD 20817.

9. Defendant is the United States of America, acting through the U.S. Agency for International Development, an independent agency responsible for administering foreign aid and assistance. Defendant is headquartered in Washington, D.C.

## FACTS

10. DAI is an international development company that has worked in more than 150 countries and has delivered results across the spectrum of international development contexts, from stable societies and high-growth economies to challenging environments racked by political or military conflict.

11. On August 23, 2018, Defendant entered into the Contract with Plaintiff. *See* Exhibit 1. Plaintiff has fully performed its contractual obligations since that time.

12. Plaintiff timely submitted an invoice on January 16, 2025 for $5,832,459.33 for services rendered between December 1 and December 31, 2024. *See* Exhibit 2.

13. The Contract provides for PPA interest. *See* Exhibit 1 at 73 (incorporating FAR 52.232-25). The invoice contained all information required by the PPA. The PPA specifies that contracting officers have seven days from receipt of an invoice in which to notify the contractor that an invoice is improper. Other than $1,696.82 in visa application fees that were inadvertently included in the invoice, Defendant did not notify Plaintiff within seven days of any other issues with the invoice. Therefore, under the PPA and FAR 52.232-25, Defendant was required to make payment within 30 days of $5,830,762.51 by February 15, 2025. This constitutes the invoiced amount minus the inadvertently included costs.

14. Plaintiff submitted a certified claim to Defendant for this invoice on February 18, 2025. *See* Exhibit 3. The claim cited 41 U.S.C. § 7103 and FAR 52.233-1 and requested a final decision. *Id.*

15. USAID has not paid the invoice to date. In response to the certified claim, USAID responded that the invoice had been approved for payment for the modified amount but that payment "is pending Certifying Officer approval due to

4

the current restrictions in our payments system (Phoenix).  USAID/Ukraine has not been able to take action given the current restrictions on Phoenix."

16.  Although the contracting officer ordinarily would have 60 days to render a decision on such a claim, this administrative exhaustion requirement would be futile in this case.  *See Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) ("The futility exception to the exhaustion requirement has been applied in situations in which enforcing the exhaustion requirement would mean that parties would be required to go through obviously useless motions in order to preserve their rights.") (quotations omitted); *Cienega Gardens v. United States*, 265 F.3d 1237, 1246 (Fed. Cir. 2001) (citing cases).

17.  Here, Defendant has amply demonstrated that it does not intend to honor its contractual obligations, making the claims process futile.  This administration has issued a series of orders attempting to dismantle USAID and its programs around the world.  For example:

  a.  On January 20, 2025, the President issued an executive order entitled "Reevaluating and Realigning United States Foreign Aid." Executive Order No. 14169, 90 Fed. Reg. 8619 (Jan. 20, 2025).  The order directed an immediate pause in all "foreign development assistance," including for disbursements of development assistance funds, and directed the Office of Management and Budget to "enforce this pause through its apportionment authority." *Id.* § 3(a).

    b.    The Secretary of State subsequently suspended all funding for foreign assistance programs funded by or through the State Department and USAID.  USAID officials also issued instructions to pause new funding and immediately issue stop-work orders.  The OMB's acting director also issued a memorandum ordering a temporary pause of all federal financial assistance, including assistance for foreign aid and nongovernmental organizations.  Although these actions were enjoined by a federal court, Defendant did not comply with that order.  *See AIDS Vaccine Advocacy Coalition v. U.S. Department of State*, Case No. 25-cv-400 (D.D.C.), Dkt. 30; *see also id.*, February 25, 2025 Minute Order (granting Plaintiffs' motion to enforce the previously issued temporary restraining order and ordering Defendants to comply).  The U.S. Supreme Court has at least temporarily stayed the injunction, allowing Defendants to continue its blanket non-payment to contractors.

    c.    On February 6, 2025, the administration announced that it would put approximately 97% of USAID's employees on administrative leave or furlough, with only 294 employees remaining.[1]  Although a federal court issued a temporary

---

[1] *See* Max Matza and James FitzGerald, "USAID could slash staff to hundreds after placing most on leave," BBC (Feb. 7, 2025); Jonathan Landay, Patricia Zengerle,

        restraining order preventing USAID from carrying through this announcement, the court dissolved that order on February 21, 2025.

    d.    On February 23, 2025, Defendant announced on the USAID website that "all USAID direct hire personnel, with the exception of designated personnel responsible for mission-critical functions, core leadership and/or specially designated programs, will be placed on administrative leave globally." This order was effective immediately. It also announced that it "is beginning to implement a Reduction-in-Force that will affect approximately 1,600 USAID personnel with duty stations in the United States." USAID staff were given 15 minutes to gather their belongings and then were removed from their offices on February 26 and 27, 2025.[2]

18.    Plaintiff treats this as a deemed denial of its claims and seeks relief before this Court, given (a) Defendant's failure to issue a decision on Plaintiff's certified claim within a reasonable time, and (b) the futility of waiting through the statutory certified claims process because of Defendant's blanket refusal to make payments and its lack of any personnel to process claims.

---

and Erin Banco, "Trump administration to keep only 294 USAID staff out of over 10,000 globally, sources say," REUTERS (February 6, 2025).

[2] *See* Lucien Bruggeman and Shannon K. Kingston, "USAID staff given 15 minutes to gather belongings from Washington, D.C., office," ABC NEWS (Feb. 25, 2025).

## COUNT I
## Breach of Contract

19. Plaintiff incorporates the above paragraphs as if fully set forth herein.

20. The Contract between Plaintiff and Defendant constitutes a valid and binding contract.

21. Plaintiff performed all required contractual obligations and submitted proper and timely invoices.

22. Defendant's failure to make payment constitutes a breach of contract and a violation of the Prompt Payment Act and applicable FAR regulations.

23. As a direct and proximate result of this breach, Company has suffered damages in the amount of $5,830,762.51, plus applicable interest and penalties as provided by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Enter judgment in favor of Plaintiff and against Defendant in the amount of $5,830,762.51, plus applicable interest under 31 U.S.C. § 3902.

2. Award Plaintiff its costs and attorneys' fees incurred in this action.

3. Grant such other relief as the Court deems just and proper.

Dated: March 3, 2025                    Respectfully submitted,


                                        */s/ Robert Nichols*

                                        Robert Nichols
                                        Michael Bhargava
                                        Nichols Liu LLP
                                        655 15th Street NW, Suite 425
                                        Washington, DC 20005
                                        rnichols@nicholsliu.com
                                        mbhargava@nicholsliu.com
                                        (202) 846-9811

                                        *Counsel for Plaintiff*
                                        *DAI Global, LLC*